# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANTONIO SERNA,

    Plaintiff,

vs.                                                                         No. 19-cv-214 MV-GBW

DR. LAURSEN,
FNU MARTINEZ, *Medical Director*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Antonio Serna's *Pro Se* Civil Rights Complaint (Docs. 1-1, 1-2, 1-3). Also before the Court is his Motion for Preliminary Injunction (Doc. 6). Plaintiff is incarcerated and appears *pro se*. He contends that prison officials were deliberately indifferent to his medical needs by failing to treat his nail fungus and a bone spur on his foot. Having reviewed the matter under 28 U.S.C. § 1915A, the Court will deny the Motion as moot; dismiss the Complaint; and grant leave to amend.

## I. **Background**[1]

Plaintiff was previously an inmate at the Northeast New Mexico Detention Facility ("NNMDF"). (Doc. 6 at 11). He alleges NNMDF officials failed to treat two injuries for nearly a year. (Doc. 1-2 at 7). The first injury involves Plaintiff's right thumb. *Id.* at 9. In mid-2018, he smashed his thumb on, or against, his metal locker. *Id.* at 10. The thumb was severely bruised,

---

[1] The background facts are taken from Plaintiff's complaint (Docs. 1-1, 1-2, 1-3). For the purpose of this ruling, the Court assumes Plaintiff's allegations are true.

and Plaintiff could see blood under his fingernail. *Id.* About a week later, the nail fell off. *Id.* The thumb would periodically bleed and secrete pus. *Id.* Plaintiff was seen by Dr. Laursen, who stated: "it takes up to a year for the nail to grow back, so give it a little time." *Id.* Thereafter, Plaintiff contracted a nail fungus, which spread to other fingers. *Id.* NNMDF medical officials gave him anti-fungus ointment, but it did not resolve the issue. *Id.* Plaintiff contends that his finger looks like it was "cut in a pencil sharpener," and he could not always obtain band-aids. *Id.* At some point N.P. Alice Martinez became frustrated with Plaintiff's visits to the medical unit and, upon seeing him, said: "Not [Plaintiff] again, with his nail or lack thereof." *Id.* at 9. Plaintiff engaged in a verbal exchange regarding Martinez's manicure. *Id.* It is not clear whether he was seen or treated on that day.

The second medical issue relates to a bone spur on Plaintiff's heel. (Doc. 1-2 at 9). NNMDF officials ordered x-rays of Plaintiff's foot, which led to the diagnosis. *Id.* at 10. Plaintiff asked to see a specialist for treatment, but NNMDF officials denied the request. *Id.* at 9. Dr. Laursen gave Plaintiff a muscle rub, but she would not give him a cane or other heel-support. *Id.* at 10. Plaintiff experiences pain when he is on his feet all day, and he has to slowly increase pressure on his foot when he stands up in the morning. *Id.* at 10. He received pain medication for his lower back (Ultram),[2] but Dr. Laursen would not give him additional medication for the bone spur. *Id.* Dr. Laursen encouraged Plaintiff to overcome the pain through mindfulness. *Id.* at 9-10. She also gave Ultram to her elderly dog, and when she discussed a reduction in Plaintiff's dose, he felt like "less than a dog in her eyes." *Id.* at 11. N.P. Martinez recommended Plaintiff slam his

---

[2] The Complaint uses the spelling "Altrum," but the Court discerns Plaintiff is referring to Ultram (generic name, Tramadol). If the Court is incorrect, Plaintiff may indicate that in the amended complaint.

foot on the floor to remove the bone spur, but she may have been using sarcasm. *Id.* A later filing by Plaintiff indicates that in May of 2019, NNMDF officials arranged for a corrective surgery on the bone spur. (Doc. 6 at 3).

Based on these facts, Plaintiff alleges that Laursen and Martinez were negligent and deliberately indifferent to his medical needs. The Complaint also alleges that Lieutenant Jackson placed Plaintiff in segregation due to Plaintiff's race, but this does not appear to constitute a separate claim.³ (Doc. 1-2 at 6). Plaintiff seeks at least $150,000 in damages. *Id.* at 8. Defendants Laursen and Martinez, through counsel, removed the Complaint to Federal Court on March 13, 2019. Thereafter, Plaintiff filed a Motion for Preliminary Injunction (Doc. 6) (Injunction Motion). Defendants paid the filing fee upon removal, and the Motion and Complaint are ready for initial review.

## II. **Preliminary Injunction**

As an initial matter, Plaintiff seeks a mandatory injunction requiring Laursen and Martinez to provide better medical treatment. After filing the Injunction Motion, the New Mexico Department of Corrections ("NMDOC") transferred Plaintiff to the Penitentiary of New Mexico ("PNM"). (Doc. 7). "Where the prisoner's claims for … injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief," and the

---

³ Based on context, Plaintiff appears to have raised the segregation issue to demonstrate why he was unable to perform more legal research to support his medical claims. (Doc. 1-2 at 6-7). Jackson is also not a named Defendant, and Plaintiff's supporting facts only feature in two sections: Section "#1" describes the thumb issues, and Section "#2" provides information about the bone spur. (Doc. 1-2 at 6, 9). However, if Plaintiff intended to raise a claim based on segregation, he can include it in the amended complaint.

motion is moot. *Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011). This is because a "prisoner's transfer … signals the end of the alleged deprivation of his constitutional rights," and an injunction "would have no effect on the defendants' behavior towards him." *Id.* (quotations omitted). The only exception is where "a prisoner brings a lawsuit challenging policies that apply in a generally uniform fashion throughout a prison system," and the lawsuit is directed at the "director of the prison system or the prison system itself." *Id.* at 1028.

Here, Plaintiff is seeking protection from conditions specific to NNMDF (*i.e.,* the alleged deprivation of care by Defendants Laursen and Martinez), rather than any NMDOC policy. He is now incarcerated at PNM, and an injunction would have no effect on Defendants' behavior towards him. The Court will therefore deny the Injunction Motion (Doc. 6) as moot, and without prejudice. If Plaintiff is still not receiving adequate care at PNM, he may seek injunctive relief against those medical officials.

### III. Screening the Complaint

A. Standard of Review

The Court has discretion to dismiss an inmate complaint *sua sponte* under 28 U.S.C. § 1915A at any time if the action is frivolous, malicious, or fails to state a claim on which relief may be granted. The Court may also dismiss a complaint *sua sponte* under Rule 12(b)(6) of the Federal Rules of Civil Procedure if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted). The plaintiff must frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall,* 935 F.2d at 1110. While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements." *Id.* Further, *pro se* plaintiffs should ordinarily be given the opportunity to cure defects in the original complaint, unless amendment would be futile. *Id.* at 1109.

B. <u>Discussion</u>

Plaintiff's constitutional claims are asserted pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *See Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046.

The specific constitutional claim that Plaintiff raises is deliberate indifference to medical needs. In *Estelle v. Gamble*, the Supreme Court held that "[a] prison official's deliberate

indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.")). Such deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

Under the *Estelle* deliberate indifference standard, the test for constitutional liability of prison officials "involves both an objective and a subjective component." *Mata*, 427 F.3d at 751 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). First, Plaintiff must show "objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (citation omitted).

"The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (citation omitted). If a plaintiff's claim is based on a delay in medical care (such as the delay in arranging surgery for the bone spur), the plaintiff also must show that "the delay resulted in substantial harm." *Mata*, 427 F.3d at 751 (citation omitted). In *Mata*, the Tenth Circuit clarified that, in determining whether the plaintiff has suffered substantial harm as a result of a delay in medical care, there are two distinct types of "substantial harm" that the Court may consider. 427 F.3d at 753. First, the Court may consider

6

"some intermediate harm," such as the plaintiff's experience of prolonged or severe pain or suffering during the period when medical attention was withheld or delayed. *Id.* Second, the Court may consider "the last untoward event to befall" the plaintiff, such as the subsequent or long-term deleterious effect on the plaintiff's health caused by the prison's dilatory response to his medical needs. *Id.* Regardless of which type of harm the plaintiff seeks to establish, "the focus of the objective prong should be solely on whether the harm is sufficiently serious." *Id.*

Once a plaintiff has met the objective prong of the deliberate indifference test by demonstrating that his or her "medical need was objectively sufficiently serious," the plaintiff next must meet the subjective prong of the deliberate indifference test. *Id.* at 752. "The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Id.* at 751. Specifically, the subjective component is met if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Notably, "[d]eliberate indifference does not require a finding of express intent to harm." *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996). Accordingly, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. In other words, "[t]o show the requisite deliberate indifference," a plaintiff "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir.2006) (quoting

*Farmer*, 511 U.S. at 847).

                i.        *Fungal Issues in Thumb*

Plaintiff's first medical issue relates to a fungal infection in his thumb and fingers. Most courts have held that nail fungus does not constitute a serious medical need. *See, e.g., Aragon v. Baroni*, No. 13-cv-2772, 2014 WL 3562998, *9 (D. Colo. July 18, 2014) (plaintiff's fungal infection in three fingernails does not meet the Eighth Amendment's objective component); *Walker v. Dart*, No. 09-cv-1752, 2010 WL 669448, at *4 (N.D. Ill. Feb. 19, 2010) ("Although uncomfortable, a foot fungus… is not a serious medical need or injury."); *Cox v. Hartshorn*, 503 F. Supp. 2d 1078, 1085 (C.D. Ill. 2007) (same); *Patterson v. Kim*, No. 08-cv-873, 2009 WL 2982753, at *8 (W.D. Mich. Sep. 14, 2009) (same); *Fear v. Diboll Corr. Ctr.*, 582 F. Supp. 2d 841 (E.D. Tex. 2008) (nail fungus condition did not amount to a serious medical need); *Winkleman v. Feinerman*, No. 08-cv-369, 2010 WL 5479666 (S.D. Ill. Dec. 6, 2010) (casting doubt on whether nail fungus constitutes a serious medical need). At least one court has recognized that fungus can represent a serious medical need where the nail becomes infected, is bleeding, emits a foul smell, and causes extreme pain. *See Romero v. Folino*, No. 13-cv-691, 2014 WL 710025, *8-9 (W.D. Pa. Feb. 25, 2014).

Assuming that this case is more like *Romero*, and Plaintiff can satisfy the objective element of the deliberate indifference test, the Court needs more information before concluding that the subjective prong is met. Dr. Laursen evaluated Plaintiff's thumb nail when it fell off and advised that it could take up to one year for the nail to grow back. (Doc. 1-2 at 10). Defendants also treated Plaintiff's nail with anti-fungal cream, even if that treatment did not work. Taken as a whole, the Complaint appears to "concern[] not the absence of help, but the choice of a certain course of

8

treatment…" for less than one year, which is insufficient to demonstrate deliberate indifference. *Sherman v. Klenke*, 653 F. App'x 580, 588 (10th Cir. 2016) (quotations omitted); *Goines v. Hill*, 139 F.3d 911 (10th Cir. 1998) ("claims that the medical staff prescribed ineffective and generic medications … indicate mere disagreement with the nature of the care provided or the course of treatment prescribed, which does not rise to the level of deliberate indifference"). Further, to the extent that Plaintiff cites the mutual animosity between himself and N.P. Martinez, there is no indication that this animosity influenced Dr. Laursen's treatment of Plaintiff's thumb. Therefore, the current Complaint does not establish deliberate indifference in connection with Plaintiff's fungal infection.

      ii.     *Bone Spur*

With respect to the bone spur on Plaintiff's foot, the Court assumes without deciding that the pain he experienced qualified as a serious harm. Nevertheless, there is no evidence that Defendants "fail[ed] to take reasonable measures to abate [the pain]." *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006) (addressing the subjective element of deliberate indifference). Dr. Laursen, who appears to have primarily treated Plaintiff's foot, ordered x-rays to diagnose the bone spur and dispensed Ultram (generic name, Tramadol) for other pain. (Doc. 1-2 at 10-11). NNMDF medical officials also arranged for Plaintiff to have corrective surgery nearly one year after symptoms appeared and/or he complained. (Doc. 6 at 3). "The subjective component [of the deliberate indifference test] is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises h[er] considered medical judgment" regarding "whether to consult a specialist" or prescribe a particular type of medication. *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Therefore, Defendants' pre-surgery plan does not demonstrate deliberate indifference

9

as to the bone spur, notwithstanding Martinez's combative comments or the fact that Laursen also gave Ultram to her dog.

Based on the foregoing, the Court concludes that Plaintiff's Complaint fails to state a cognizable constitutional claim. The Tenth Circuit counsels that "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). The Court will allow Plaintiff to file an amended complaint within seventy-five (75) days of service of this Order. The Court will not evaluate Plaintiff's state-law negligence claims until it determines whether the constitutional claims survive initial review. In addition, any amended complaint should "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). The Complaint should consist of one short, plain statement of the grounds for relief, as required by Fed. R. Civ. P. 8(a), and Plaintiff should clarify which provider treated each injury. If Plaintiff declines to timely file an amended complaint or files an amended complaint that similarly fails to state a federal claim, the Court may dismiss this case without further notice.

**IT IS ORDERED** that the Motion for Preliminary Injunction (Doc. 6) is **DENIED as moot**;

**IT IS FURTHER ORDERED** that pursuant to 28 U.S.C. § 1915A, Plaintiff's *Pro Se* Civil Rights Complaint (Docs. 1-1, 1-2, 1-3) is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FINALLY ORDERED** that Plaintiff may file an amended complaint within seventy-five (75) days of service of this order.

*[signature]*
_____
HONORABLE MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE