# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ANTONIO SERNA,

    Plaintiff,

v.                                                                                                                                         Civ. No. 19-214 MV/GBW

DR. LARSEN,
FNU MARTINEZ,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me on Defendants' *Martinez* Report and Motion for Summary Judgment (*doc. 28*) pursuant to the Court's Order of Reference (*doc. 20*), referring this case to me for analysis, findings of fact, evidentiary hearings if warranted, and recommendations for its ultimate disposition. Having reviewed Defendants' Motion, the attendant briefing (*docs. 29, 30*), all available evidence, and all applicable law, I find that Plaintiff failed to exhaust his administrative remedies before filing suit. I therefore DENY Plaintiff's request for a hearing (*doc. 36*) and RECOMMEND that Plaintiff's case be dismissed without prejudice.

## I.    BACKGROUND

Plaintiff, a prisoner in custody of the New Mexico Corrections Department ("NMCD") proceeding *pro se*, initiated the present suit in state court on June 15, 2018.

*See* doc. 1-1.  Plaintiff asserted claims of medical negligence by Defendants Abbie Laursen[1] and Alice Martinez, a doctor and health services administrator[2] respectively at the Northeast New Mexico Detention Facility ("NENMDF"), where Plaintiff was housed when he injured his right thumb and developed a bone spur in his left heel.  *See doc. 28-2.*

On January 29, 2019, Plaintiff was ordered to file a legible amended complaint.  *Doc. 28-3.*  On February 27, 2019, Plaintiff filed a Motion to Grant Relief, in which he states that he was placed in segregation, preventing him from amending his complaint.  *Doc. 1-2.*  On March 8, 2019, Plaintiff filed another Motion to Grant Relief, in which he asserts that Defendants' conduct violated the Eighth Amendment of the U.S. Constitution.  *Doc. 1-3.*  Based on this assertion of a federal cause of action, Defendants removed Plaintiff's case to this Court on March 13, 2019.  *Doc. 1.*

On March 20, 2020, after reviewing Plaintiff's filings pursuant to 28 U.S.C. § 1915A, the Court determined that Plaintiff failed to state a claim upon which relief may be granted but permitted Plaintiff to file an amended complaint.  *Doc. 10.*  The operative complaint in this matter was filed September 21, 2020.  *Doc. 19.*  Plaintiff's factual allegations are as follows:  Beginning in March 2018, Plaintiff began experiencing pain

---

[1] Plaintiff spells Defendant Laursen's name "Larson," but Defendants indicate that it is correctly spelled "Laursen."  *Doc. 28* at 1.

[2] Plaintiff identifies Defendant Martinez's title as "Medical Director," but Defendants indicate that her correct title was "Health Services Administrator."  *Doc. 22* at ¶ 4.

in his left heel due to a bone spur. *Id.* at ¶ 6. Defendant Laursen prescribed gel insoles but neglected to diagnose the bone spur. *Id.* On May 10, 2018, Plaintiff injured his right thumb, which became infected. *Id.* at ¶ 5. Defendant Laursen failed to treat the infection, with the result that Plaintiff suffered trauma, pain, and the loss of his thumbnail. *Id.* Defendant Martinez failed to exercise adequate oversight to protect inmates' constitutional rights. *Id.* at ¶ 7. Based on these factual allegations, Plaintiff alleges that Defendants acted with deliberate indifference to Plaintiff's rights pursuant to the United States and New Mexico Constitutions. *Id.* at ¶¶ 8–9.

On October 7, 2020, Defendants were ordered to respond to Plaintiff's complaint and file a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), to resolve Plaintiff's claims on a full record. *Doc. 21*. Defendants filed an answer on October 29, 2020. *Doc. 22*. Defendants requested and received an extension of time for the filing of the *Martinez* Report and all subsequent briefing deadlines. *Doc. 24*. On December 21, 2020, Defendants timely filed their *Martinez* Report and Motion for Summary Judgment. *Doc. 28*. Defendants present three arguments for summary judgment: (1) the infection of Plaintiff's thumbnail was not a serious medical need for purposes of the Eighth Amendment; (2) Defendants' treatment of Plaintiff's bone spur was reasonable; and (3) Plaintiff failed to exhaust administrative remedies before filing suit. *See id.* at 20–27. Plaintiff timely responded to Defendants' motion on January 13, 2021. *Doc. 29*; *see doc.*

3

*37* at 1–2.  Briefing was complete on Defendants' motion with the filing of their reply on January 27, 2021.  *Doc. 30*.

On September 21, 2020, Plaintiff filed a request for a hearing.  *Doc. 18*.  I denied that request without prejudice, stating that no hearing would be conducted prior to a determination that this case survives summary judgment.  *Doc. 21* at 3.  On March 10, 2021, Plaintiff renewed his request for a hearing.  *Doc. 36*.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324.

When reviewing a motion for summary judgment, the Court should keep in mind three principles.  First, the Court's role is not to weigh the evidence but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  *See*

*Liberty Lobby*, 477 U.S. at 249. Second, the Court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–53 (1999). Third, the Court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255.

Where, as here, a party is proceeding *pro se*, the Court is to liberally construe his pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). "But the court will not 'assume the role of advocate for the pro se litigant.'" *Baker v. Holt*, 498 F. App'x 770, 772 (10th Cir. 2012) (unpublished) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Therefore,

> although we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.

*Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks, brackets, and citation omitted).

### III. DEFENDANTS' *MARTINEZ* REPORT

As a preliminary matter, the undersigned must express some concerns regarding the sufficiency of the evidentiary record supplied by Defendants in this matter. In the Order to Submit Answer and *Martinez* Report, the undersigned specified that assertions of fact must be supported by proof and that copies of relevant records must be attached

5

and properly authenticated. *Doc. 21* at 2–3. Furthermore, it is well established that a motion for summary judgment must be supported by citations to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also* D.N.M.LR-Civ. 56.1(b) (stating that a motion for summary judgment must contain a statement of facts, which "must be **numbered** and must refer with particularity to those portions of the record upon which the movant relies").

Defendants make several factual assertions that are unsupported by citations to evidence in the record. Moreover, Defendants' factual assertions create the distinct impression that relevant records were reviewed by Defendants but omitted from their report. As an example, Defendants provide the following summary of Plaintiff's medical history without a single citation to evidence in the record:

> Plaintiff has a significant medical history which includes a wide range of well-documented psychological and physical issues and/or injuries over the course of his confinement in New Mexico's correctional facilities. Above and beyond the issues and/or injuries referenced in the instant complaint (i.e., the injury to Plaintiff's right thumb and the bone spurs in Plaintiff's left heel), *pro se* Plaintiff's documented medical issues and/or injuries include, but are not limited to, schizophrenia/bi-polar disorder, depression, anxiety, chronic pain, left shoulder pain, lumber/lower back pain, abdominal distress, optometric issues, tinnitus, allergies, and drug dependency.

*Doc. 28* at 6. If it is true that Plaintiff's medical record at NMCD is extensive, this fact only highlights the thinness of the evidentiary record supplied by Defendants.

As another example, Defendants assert that they "are compelled to note that *pro se* Plaintiff filed numerous Inmate Request Forms and/or [Health Service Request] forms

between September 5, 2017 and June 15, 2018, and that he was regularly seen by medical providers" and did not inform them of the thumb injury that forms part of his complaint. *Id.* at 7. Defendants do not cite any evidence to support this assertion. In fact, this assertion is contradicted by evidence in the record, to wit: Plaintiff purportedly had a medical appointment on May 2, 2018 at which his thumb was ostensibly evaluated. *See doc. 28-6* at 3–4. No record of a medical appointment on May 2 has been supplied, but Defendants nonetheless rely on its purported existence to assert that Plaintiff received treatment. *See doc. 28* at 7 (citing *doc. 28-6*).

The haphazard character of Defendants' factual contentions is further indicated by their unsupported assertion that, "[i]n late November 2019, NMCD contracted with a different healthcare provider organization that continued to treat *pro se* Plaintiff's thumb nail for a fungal infection. Upon information and belief, in mid-2020, *pro se* Plaintiff was transferred from the NENMDF to the State Penitentiary in Santa Fe, New Mexico." *Doc. 28* at 11. Contrary to Defendants' assertion, Plaintiff was evidently transferred to the Penitentiary of New Mexico ("PNM") sometime before September 2019. *See doc. 7* (Notice of Change of Address filed by Plaintiff on September 9, 2019). The medical records supplied by Defendants corroborate this fact. *Compare doc. 28-5* at 16 (medical record dated June 24, 2019 at NENMDF) *with id.* at 18 (medical record dated August 16, 2019 at PNM). Defendants' apparent ignorance of the basic fact of where

7

Plaintiff was located when he received medical care casts doubt on the accuracy of their entire report.

It is not just Defendants' failure to supply relevant records or to accurately recount relevant facts that concerns the undersigned. Despite apparent omissions in the medical record, Defendants have included a single record from 2008 containing a comment that Plaintiff compulsively picks at the skin of his fingers. *Doc. 28-5* at 1. The inclusion of this decade-plus-old record makes the failure to supply evidence of a medical appointment that was supposed to have taken place during the relevant period of May 2018 even more conspicuous. The undersigned further notes that the 2008 record is not relevant to any issue that may be properly decided on summary judgment. Defendants rely on this record to argue that Plaintiff's thumb injury may have been either self-inflicted or exacerbated by Plaintiff's own compulsive behavior. *See doc. 28* at 21; *doc. 30* at 2. Even if an isolated reference to compulsive picking were sufficient to permit such an inference, it would be improper to draw such a conclusion on summary judgment. *See Liberty Lobby*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]").

## IV. UNDISPUTED MATERIAL FACTS

Notwithstanding the deficiencies in Defendants' *Martinez* report, the undersigned recommends granting summary judgment to Defendants because the

record is sufficient to determine that Plaintiff failed to exhaust his administrative remedies before filing suit. Having reviewed Defendants' report, all evidence attached thereto, and Plaintiff's response, the undersigned finds the following material facts to be undisputed for the purposes of Defendants' Motion for Summary Judgment:

Pursuant to NMCD's inmate grievance policy, all inmates receive a written copy and an oral summary of grievance procedures upon arrival into NMCD custody and thereafter upon request of the inmate. *Doc. 28-7* at 3–4. The first step of the grievance procedure is the filing of an informal complaint. *Id.* at 9. Prison officials are required to "make every effort" to resolve informal complaints within five working days. *Id*.

Within five working days of receipt of a response to the informal complaint, an inmate's next step is to file a formal grievance form. *Id*. Each NMCD facility has one or more "grievance officers" assigned to investigate and resolve grievances and make recommendations to the warden for their disposition. *Id.* at 2. The grievance officer must complete his or her investigation and recommendation within fifteen working days of receipt of the inmate's grievance. *Id.* at 12. The warden (or his or her designee) must review the grievance within fifteen working days of receipt of the grievance officer's recommendation. *Id*. The inmate must be informed of the warden's (or designee's) decision within five working days. *Id*. Thus, an inmate may not receive a response to a formal grievance for up to thirty-five working days following the grievance officer's receipt of the grievance.

Within five working days of receipt of a response to the grievance, the final internal step for the inmate is to appeal the decision to the Office of the Secretary of Corrections. *Id.* at 13. Appeals decisions must be made within 90 working days of the date the inmate filed a formal grievance. *Id.* at 7. The policy provides, "In the event the grievance is not disposed of within the specified time limits [i.e., at every level of review], the inmate shall be deemed to have exhausted administrative remedies for that specific complaint." *Id*.

On or about May 10, 2018, Plaintiff filed an informal complaint regarding the infection of his right thumbnail. *Doc. 28-6* at 3. On or about May 11, 2018, Plaintiff filed an inmate grievance form asking to be sent to a specialist for his thumbnail. *Id.* at 2. Despite the fact that Plaintiff did not wait to receive a response to his informal complaint before filing a formal grievance, Plaintiff's grievance was accepted for consideration by the grievance officer. *Id*. Defendant Martinez responded to the formal grievance on May 16, 2018. *Id.* at 4.

On June 15, 2018, before receiving any decision on his grievance from the warden or warden's designee, Plaintiff filed suit. *See doc. 1-1*. On June 19, 2018, Plaintiff's grievance was reviewed by a grievance lieutenant who recommended that the grievance be marked resolved. *Doc. 28-6* at 1. On June 20, 2018, Plaintiff's grievance was marked "Resolved" by the warden or warden's designee and returned to Plaintiff. *Id*.

The record contains no evidence that Plaintiff filed any appeal to the Secretary of Corrections. The record contains no evidence that Plaintiff filed any informal complaint or formal grievance relating to treatment of his bone spur. Plaintiff does not show or contend that he filed any relevant informal complaints, formal grievances, or departmental appeals not exhibited by Defendants.

## V.   ANALYSIS

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). The exhaustion provision of the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA requires proper exhaustion, meaning that a prisoner must "complete the administrative review process in accordance with the applicable procedural rules" outlined in the prison's grievance policy. *Jones*, 549 U.S. at 218.

New Mexico similarly requires prisoners to exhaust administrative remedies before they may file suit. *See Hudson v. Calvillo*, 2018 WL 1626262, at *4 (D.N.M. Mar. 30, 2018) (unpublished). The law provides:

> No court of this state shall acquire subject-matter jurisdiction over any complaint, petition, grievance or civil action filed by any inmate of the corrections department with regard to any cause of action pursuant to state law that is substantially related to the inmate's incarceration by the corrections department until the inmate exhausts the corrections department's internal grievance procedure.

N.M. Stat. Ann. § 33-2-11(B).

Prisoner plaintiffs may be excused from the exhaustion requirement if grievance procedures are, for one reason or another, unavailable to them. *See, e.g.*, *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (plaintiff's failure to exhaust was excused where prison rendered exhaustion unavailable). Failure by prison officials "to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Lewis v. Washington*, 300 F.3d 829, 831–32 (7th Cir. 2002); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998), *overruled on other grounds as stated in Cantwell v. Sterling*, 788 F.3d 507, 509 n.2 (5th Cir. 2015)).

Plaintiff never filed any informal complaint or formal grievance with respect to the medical care of his bone spur. Therefore, Plaintiff failed to pursue (let alone exhaust) administrative remedies as to Defendants' treatment of his bone spur. Plaintiff

12

did file an informal complaint and formal grievance pertaining to the medical care of his thumbnail, but he did not await a response to the formal grievance before filing suit. Pursuant to the NMCD's policy, officials at NENMDF had thirty-five *working* days to process Plaintiff's formal grievance. Plaintiff filed suit thirty-five *calendar* days after filing his formal grievance. Officials at NENMDF returned Plaintiff's formal grievance to him four days later, and Plaintiff took no further action. Accordingly, Plaintiff failed to exhaust his administrative remedies as to Defendants' treatment of his thumbnail because he filed suit before receiving a response from prison officials, who still had time remaining to process the grievance, and because he did not pursue an appeal to the Secretary of Corrections after receiving a response.

Plaintiff raises a handful of arguments for excusal from the exhaustion requirement. Plaintiff asserts that the grievance procedures were inadequate because "many times there was no grievance officer." *Doc. 29* at 6. The grievance policy requires that each facility maintain a grievance mailbox in designated areas accessible to all inmates. *Doc. 28-7* at 4. It further requires grievance officers to check each mailbox on a weekly basis. *Id.* at 5. Plaintiff was evidently able to submit his grievance notwithstanding the physical absence of a grievance officer. And he was evidently able to receive a timely response from a grievance officer, even if he was personally dissatisfied with the turnaround time. There is no basis to conclude that the grievance procedure was unavailable to Plaintiff due to the absence of a grievance officer.

Plaintiff also relies on the lack of a written resolution to his informal complaint as evidence that grievance procedures were inadequate. *Doc. 29* at 6 (citing *doc. 28-6* at 3). The lack of a response to his informal complaint may be explained by the fact that he filed a formal grievance the very next day. *See doc. 28-6* at 2. It seems that Plaintiff may have failed to follow correct procedures by filing a formal grievance without waiting for a response to his informal complaint, although the grievance officer accepted his formal grievance notwithstanding this procedural defect. *See id*. The fact that Plaintiff did not receive a response to his informal complaint separate from the response to his formal grievance did not render the NMCD's grievance procedures unavailable to him.

Plaintiff's final argument to evade the exhaustion requirement is that he did not receive an "Inmate 5-Day Notice of Receipt of Grievance" as required by the policy. *Doc. 29* at 6; *see doc. 28-7* at 10, 19. Plaintiff points out that the record contains no evidence of a completed notice of receipt of Plaintiff's grievance. Although the title of the form implies a time limit, the policy contains no express requirement as to when notice of receipt must be provided. *See doc. 28-7* at 10. Thus, although failure by prison officials to comply with time limits may operate to exhaust administrative remedies, *see doc. 28-7* at 7, there is no apparent basis to apply this rule to the failure to provide a notice of receipt. The failure by the grievance officer to provide a notice of receipt did not render the grievance procedures unavailable to Plaintiff.

In sum, Plaintiff's arguments do not suffice to raise a genuine dispute of material fact as to whether grievance procedures were available to him. Accordingly, by filing suit before completing the internal grievance procedure, Plaintiff failed to exhaust his administrative remedies and his claims must be dismissed.

Defendants request dismissal with prejudice. *Doc. 28* at 29. Dismissal for failure to exhaust administrative remedies is ordinarily without prejudice so that the plaintiff may cure the defect by pursuing such remedies. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005); *see also Chavez v. Foster*, 2003 WL 27385248, at *3 (D.N.M. Apr. 2, 2003) (unpublished) (dismissal without prejudice notwithstanding plaintiff's transfer out of the facility where his grievance arose). Defendants do not cite any authority that would support dismissal with prejudice here. In the case cited by Defendants, *see doc. 28* at 29 (citing *Serna v. Romero*, 2012 WL 1744450, at *1 (N.M. Ct. App. Apr. 18, 2012) (unpublished)), the New Mexico Court of Appeals was silent on whether dismissal for failure to exhaust was with or without prejudice. *See Serna*, 2012 WL 1744450, at *1. Accordingly, Plaintiff's claims should be dismissed without prejudice so that he may fully exhaust such administrative remedies as are available to him.

## VI. CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT summary judgment to Defendants due to Plaintiff's failure to exhaust administrative remedies and DISMISS all of Plaintiff's claims without prejudice.

IT IS ORDERED that Plaintiff's request for a hearing (*doc. 36*) is DENIED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**